George **LEHMANN** and Ann Lehmann, Parents and Natural Guardians of C.L., Petitioners

v.

**DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 30, 2011.

Decided Oct. 25, 2011.

Donald L. Reihart, York, for petitioners.

Sherri Glantz Patchen, Senior Counsel, Philadelphia, for respondent.

Gary L. Kaplan, Pittsburgh, for intervenor Gateway Health Plan, L.P.

BEFORE: PELLEGRINI, Judge, and BROBSON, Judge, and McCULLOUGH, Judge.

OPINION BY Judge PELLEGRINI.

George and Ann Lehmann, Parents and Natural Guardians of C.L. (Appellants), petition for review of a final order by the Secretary of the Department of Public Welfare (Department) stating that growth hormone therapy was not medically necessary for their son, C.L. This appeal comes to us as a result of our remand in *Lehmann v. Department of Public Welfare* (No. 1753 C.D. 2008, filed May 1, 2009), where we ordered that new credibility decisions in the findings of fact be made because the previous credibility determinations were based on an incorrect reading of the record. Based on the new credibility determinations and findings of fact, the ALJ found that growth hormone therapy was medically necessary, but the Secretary of the Department (Secretary) reversed. Because the Secretary acted outside his

scope of review in reversing the ALJ determination, we reverse the order of the Secretary and reinstate the February 8, 2010 Order of the Bureau of Hearings and Appeals affirming the February 8, 2010 decision of the Administrative Law Judge (ALJ).

While we explained the facts more fully in our previous decision, we will repeat some of those facts in this appeal for purposes of clarity. This case centers on the Department's denial of the Appellants' request for growth hormone therapy on behalf of C.L. C.L. is a participant in Pennsylvania's Medical Assistance Program (MAP)[1] and as a participant in MAP, he is enrolled in the Gateway Health Plan (Gateway), which is a managed care organization contracted to provided medical services to MAP participants.

The Appellants timely appealed Gateway's denial to the Department. On January 2, 2007, an ALJ conducted a hearing via teleconference. Appellants appeared and represented themselves, while Gateway was represented by a physician and an attorney. The ALJ denied the Appellants' appeal, opining that while the growth hormone therapy was medically indicated and medically necessary for individuals with growth hormone deficiency, testing did not indicate that C.L. suffered from such a deficiency. The Department issued a final order on January 5, 2007, affirming the ALJ's order. Appellants filed a Petition for Reconsideration, which was granted on January 31, 2007. On May 18, 2007, the Secretary issued a final order upholding the January 5, 2007 order denying the Appellants' appeal. The Appellants appealed to this Court, and based on a joint stipulation of the parties, we remanded the matter to the Department for a second hearing on the merits.

On March 31, 2008, a hearing was held before ALJ Nicole J. Rademan (ALJ Rademan), during which the Appellants submitted, among other exhibits, Dr. Guttman–Bauman's Letter of Medical Necessity dated March 23, 2006, Dr. Nussbaum's Letter of Medical Necessity dated April 18, 2006, and Dr. Guttman–Bauman's clinical notes from C.L.'s medical visits. Background information on Idiopathic Short Stature and case studies of hormone replacement therapy in children with Kabuki Syndrome[2] were also presented. In Dr. Nussbaum's letter, he indicated that C.L. was a twelve-year-old with Kabuki syndrome and suffered from postnatal growth retardation, as he was growing below the fifth percentile. Dr. Nussbaum also noted that C.L. was seen by Dr. Guttman–Bauman, who felt that he had idiopathic growth retardation. Dr. Nussbaum further noted that regardless of the results of a growth hormone deficiency test, C.L. qualified for treatment with growth hormone because of his growth pattern. He noted that he reached this determination

---

1. MAP is "a state plan for funding the provision of medical care and services to individuals in need of government aid, conducted with the assistance of federal funding and subject to extensive federal regulation." *Department of Public Welfare v. Presbyterian Medical Center of Oakmont*, 583 Pa. 336, 338, 877 A.2d 419, 421 (2005). The Department has the authority to administer MAP and has promulgated rules, regulations, and standards regarding assistance. *See* Section 403 of the Public Welfare Code, Act of June 13, 1967, P.L. 31, *as amended*, 62 P.S. § 403.

2. C.L. was diagnosed with Kabuki Syndrome in 1999.

[Kabuki Syndrome] is a complex syndrome diagnosed by a physician identifying four of its five main characteristics in the patient. These characteristics include unique facial features, skeletal abnormalities, dermatoglyphic abnormalities, intellectual disability, and postnatal short stature.

*Lehmann v. Department of Public Welfare* (No. 1753 C.D. 2008, filed May 1, 2009).

because C.L.'s growth pattern dropped off as would someone with growth hormone deficiency, and also because children with Kabuki Syndrome have also been noted to have short stature. Dr. Nussbaum further pointed out that because there are such a small number of children with this syndrome, it is impossible to tell whether the growth hormone would work.

Also submitted were Dr. Guttman–Bauman's May 15, 2006 clinical notes, in which she diagnosed C.L. with Idiopathic Short Stature based on his current height and final height prediction. She also recommended growth hormone treatment and noted that C.L. had a history of Kabuki Syndrome and Idiopathic Short Stature. In her August 31, 2006 clinical notes, Dr. Guttman–Bauman again noted the history of Kabuki Syndrome and Idiopathic Short Stature and recommended continuing growth hormone treatment because of the improvement in C.L.'s height after taking Norditropin for several months. In her February 7, 2008 clinical notes, Dr. Guttman–Bauman further noted that C.L. was a rare survivor of Kabuki Syndrome, as most children with the syndrome were generally not expected to live longer than seven years.

Gateway presented the testimony of Edwin Kairis, M.D. (Dr. Kairis), its Medical Director and a board-certified pediatrician. Dr. Kairis testified that Norditropin was a type of growth hormone used to treat growth hormone deficiency in both pediatric and adult patients, and was also used to treat Idiopathic Short Stature, which literally means short stature without an explainable cause. Dr. Kairis further testified that testing indicated that C.L. did not have a growth hormone deficiency and no other specific diagnoses for growth hormone therapy applied. Dr. Kairis discussed Kabuki Syndrome and explained that postnatal short stature is among its characteristic skeletal abnormalities.

Dr. Kairis testified that growth hormone therapy was not medically necessary for C.L. because Kabuki Syndrome is a congenital condition and C.L.'s short stature was an extension of those conditions, so growth hormones would not be expected to prevent the onset of short stature or any other condition. Additionally, Dr. Kairis said he did not believe growth hormone therapy could be reasonably expected to reduce or ameliorate the physical, mental, or developmental effects of C.L.'s condition because testing demonstrated that C.L. did not have a growth hormone deficiency and use of growth hormone in patients with short stature associated with Kabuki Syndrome was not clinically supported by available medical literature. Because there was no clinical support for this treatment, growth hormone therapy was not expected to assist C.L. in achieving or maintaining maximum functional capacity in performing daily activities.

In regard to Dr. Guttman–Bauman's diagnosis and prescribed treatment, Dr. Kairis said there was no support in the medical community for growth hormone treatment for Kabuki Syndrome. He did not agree with Dr. Guttman–Bauman's recommendation that growth hormone treatment was appropriate because C.L. qualified under his Idiopathic Short Stature diagnosis. Rather, Dr. Kairis said that C.L.'s short stature was not idiopathic or without an explainable cause, but was a known finding in children with Kabuki Syndrome. Dr. Kairis also testified that Dr. Guttman–Bauman's notes from November 14, 2005 and January 25, 2006 failed to mention Idiopathic Short Stature, but the notes from May 15, 2006 and August 31, 2006 did mention the diagnosis, after the insurer denied growth hormone therapy on February 17, 2006.[3]

3. Dr. Guttman–Bauman's January 25, 2006 clinical note diagnosed C.L. with Idiopathic

ALJ Rademan determined that Gateway was correct in denying the Appellants' request for growth hormone treatment because it was not medically necessary and denied the appeal. Specifically, ALJ Rademan found Dr. Kairis' testimony to be credible and noted that the documentary testimony provided by the Appellants' physicians was not credible. Additionally, ALJ Rademan found that it was not the standard of care within the medical community to treat Kabuki Syndrome with growth hormone therapy, but it was the standard of care to use growth hormone therapy to treat Idiopathic Short Stature. She also found that C.L. does not have Idiopathic Short Stature, but rather, his short stature is secondary to Kabuki Syndrome. Finally, she found that C.L. was not diagnosed with Idiopathic Short Stature until after the insurer denied the request for growth hormone therapy. This last fact ALJ Rademan noted "severely undercuts their credibility ... particularly as they have provided no explanation for this discrepancy." (Remand Adjudication of May 5, 2008, at 7). ALJ Rademan concluded that because there was no evidence that growth hormone therapy would improve the symptoms of Kabuki Syndrome, it was not medically necessary.

The Department affirmed ALJ Rademan's Remand Adjudication on May 5, 2008. It then granted Appellants' Petition for Reconsideration, but issued a final order on August 14, 2008, upholding the May 5, 2008 decision. Appellants appealed to this Court. On May 1, 2009, we vacated and remanded the May 5, 2008 decision because ALJ Rademan's credibility determinations were based on incorrect facts; specifically, ALJ Rademan incorrectly stated that the diagnosis of Idiopathic

Short Stature, several weeks before the February 17, 2006 denial by the insurer. (R.R. at

Short Stature came only after the initial denial of growth hormone treatment by the insurer and largely based her credibility findings on this misconception.

On remand, ALJ Robert Brittain (ALJ Brittain) found that the growth hormone therapy "was medically necessary because it is reasonably expected to reduce or ameliorate the physical and development effects of [C.L.'s] Idiopathic Short Stature." (Remand Adjudication at 9). In arriving at this conclusion, he found "that the opinions in the testimony of Gateway's witnesses are outweighed by the competent and reliable documentary evidence presented by [C.L.]." *Id.* ALJ Brittain found, in relevant part, that:

20. On January 25, 2006, [C.L.'s] physician, [Dr. Guttman–Bauman], diagnosed [him] as suffering from Idiopathic Short Stature and Kabuki syndrome and requested growth hormone therapy. (Exhibits C–6 and C–10).

21. [C.L.] does not have growth hormone deficiency. (Exhibits C–7 and C–8 and Testimony of Dr. Kairis).

22. Idiopathic short stature is defined as shortness with no known cause. (Testimony of Dr. Kairis and Exhibits C–9 and A–8).

23. In August 2003, the Food and Drug Administration [ (FDA) ] approved the use of growth hormone in individuals who are short without known cause. . . .

24. [C.L.] is expected to attain a height below 5′3″ (Exhibits A–4 and A–6).

(Remand Adjudication at 7). The Bureau of Hearings and Appeals affirmed ALJ Brittain's decision on February 8, 2010, and Gateway filed a Petition for Reconsideration on February 23, 2010, which the Department granted.

31a.)

■ On January 14, 2011, the Secretary issued a final order and made the following additional findings of fact:

27. Kabuki syndrome includes five main characteristics, including . . . postnatal short stature. (Testimony of Dr. Kairis and Exh. C–11 and A–4).

28. The case studies submitted into evidence by [the Appellants] on the use of growth hormone therapy in patients with Kabuki syndrome concerned individuals with a dual diagnosis of Kabuki syndrome and growth hormone deficiency. (Exh. A–8 and A–9).

29. It is not the standard of care within the medical community to treat Kabuki syndrome with growth hormone therapy. (Testimony of Dr. Kairis and Exh. C–3).

30. [C.L.] does not have idiopathic short stature, as his short stature is secondary to Kabuki syndrome. (Testimony of Dr. Kairis and Exh. C–3, A–3 and A–4).

31. The testimony of Dr. Kairis was credible.

32. The documentary evidence submitted by [the Appellants], while credible, was not given any weight because the [C.L.] does not have idiopathic short stature or growth hormone deficiency.

(Final Order dated January 14, 2011, at 1–2). Based on all the findings of fact on record, the Secretary determined that growth hormone therapy was not medically necessary and issued a final order setting aside the February 8, 2010 decision and denying the appeal. This appeal followed.[4]

On appeal, Appellants contend that the Secretary exceeded the scope of his authority by disregarding the ALJ's findings of fact and making his own. To resolve this question, it is necessary to set forth the hearing and review process involving challenges to Departmental determinations.

In those challenges, the "hearing authority" lies with the Secretary. 55 Pa. Code § 275.4(h)(1)(i). However, the Secretary has delegated his authority to conduct hearings to designated hearing officers who render decisions, and those decisions are either affirmed, reversed, amended, or remanded by the Director of the Office of Hearings and Appeals (Director). 55 Pa.Code § 275.4(h)(4)(i). Either party may then seek reconsideration by the Secretary. 55 Pa.Code § 275.4(h)(4)(ii).

■ While the Secretary is the hearing authority, the Secretary is *not* the finder of fact and his authority to review the decision is limited. 55 Pa.Code § 275.4(h)(4)(ii) provides that the "Secretary may affirm, amend, or reverse the decision of the Director, or remand the case to the hearing officer for further findings of fact. Actions taken by the Secretary will be confined to matters of law and established departmental policy; no findings of fact made by the hearing examiner will be subject to reversal. The Secretary may, however, remand the case to the Director for further findings of fact." A hearing examiner's findings of fact may not be set aside if they are supported by substantial evidence. *Augelli v. Department of Public Welfare,* 79 Pa.Cmwlth. 34, 468 A.2d 524 (1983).

---

4. "Our scope of review in these cases is limited to determining whether or not the final adjudication was in accordance with law, constitutional rights were violated, or all necessary findings of fact were supported by substantial evidence." *Holloway v. Department of Public Welfare,* 67 Pa.Cmwlth. 6, 445 A.2d 1329, 1330 (1982) (citing *Musselman v. Department of Public Welfare,* 39 Pa.Cmwlth. 537, 395 A.2d 1047 (1979)).

While it does not dispute that the Secretary made additional findings of fact, the Department argues this was justified "because [the Secretary] found that the decision of the ALJ was not supported by substantial evidence."[5] (Brief of Respondent at 18). This argument is disingenuous for several reasons.

██ First, the Secretary never found that the ALJ's decision was not supported by substantial evidence; instead he made additional findings. The Secretary relied on Gateway's witnesses to find that treatment is not medically necessary because, contrary to the ALJ's determination, C.L. does not have idiopathic short stature because his short stature is secondary to Kabuki syndrome, and growth hormone therapy is not the standard of care for treating Kabuki syndrome.

Second, if the Secretary finds that the ALJ's decision is not supported by substantial evidence, his discretion is limited to affirming, amending, or reversing the decision of the Director, or remanding the case to the hearing officer for further findings of fact, not to make new findings.

██ Finally, contrary to the Department's contention, ALJ Brittain's decision was supported by substantial evidence, including but not limited to clinical notes, and testimony from both Dr. Guttman–Bauman and Dr. Nussbaum that C.L. suffered from idiopathic short syndrome and growth hormone therapy was medically necessary. Blithely, the Secretary disregarded Appellants' doctor's diagnosis and opinion because "[t]he documentary evidence submitted by the Appellant, while credible, was not given any weight because the Appellant does not have idiopathic short stature or growth hormone deficiency." (Final Order dated January 14, 2011 at 2). In doing this, the Secretary disregarded the facts found by ALJ Brittain, which is impermissible. *Gallo*, at 988 n. 1.

Because 55 Pa.Code § 275.4(h)(4)(ii) states that no findings of fact made by the ALJ will be subject to reversal and the Secretary reversed the ALJ's decision based on his own fact finding, the Secretary exceeded his scope of review of the ALJ's determination.[6] Accordingly, we reverse the January 14, 2011 Order of the Secretary and reinstate the February 8, 2010 Order of the Bureau of Hearings and Appeals affirming the February 8, 2010 decision of the ALJ.

### ORDER

AND NOW, this 25th day of October, 2011, the order of the Secretary of the Department of Public Welfare, dated January 14, 2011, is hereby reversed and the Order of the Bureau of Hearings and Appeals dated February 8, 2010, is reinstated.

5. Substantial evidence is "the relevant evidence that a reasonable mind, without weighing the evidence or substituting its judgment for that of the factfinder, might accept as adequate to support the conclusion reached." *Gallo v. Workmen's Compensation Appeal Board (United Parcel Service)*, 95 Pa.Cmwlth. 158, 504 A.2d 985, 988 n. 1 (1986).

6. Because we find that the Secretary engaged in impermissible fact finding, we need not address Appellants' argument that the Secretary's order is deficient because it failed to provide a reasoned explanation for the decision.